## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

ARIEL ALEJANDRO
CARMONA RAMIREZ,

Petitioner,

v.

RUBEN LEYVA, *et al.*,

Respondents.

Case No. 2:26-cv-01219-RFB-EJY

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Ariel Alejandro Carmona Ramirez's Petition for Writ of Habeas Corpus, which he filed pursuant to 28 U.S.C. § 2241. See generally Pet. for Writ of Habeas Corpus, ECF No. 1-1 [hereinafter, "Petition"]. For the following reasons, the Court grants the Petition.

Petitioner challenges the lawfulness of his ongoing detention at the Nevada Southern Detention Center ("NSDC") in the custody of Immigration and Customs Enforcement ("ICE"). Federal Respondents (also referred to herein as "the government") are detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A), a provision of the Immigration and Nationality Act ("INA") that generally[1] mandates detention without the possibility of release on bond or parole during the pendency of a noncitizen's removal proceedings. See generally Fed. Resp'ts' Resp. to Pet'r's Verified Am. Pet. for Habeas Corpus 2, ECF No. 7 [hereinafter, "Opposition"]. In turn, Petitioner argues that he is a member of the Jacobo-Ramirez Class, such that his ongoing detention, and his arrest and detention without required procedures violates: (i.) the Immigration and Nationality Act

---

[1] Noncitizens detained under § 1225(b) "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit'" at the arresting ICE officer's discretion. Jacobo-Ramirez v. Mullin, No. 2:25-CV-02136-RFB-MDC, 2026 WL 879799, at *8 (D. Nev. Mar. 30, 2026) (citing Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (citing 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5)).

("INA"); (ii.) this Court's partial summary judgment in favor of the class; and (iii.) the Due Process Clause of the Fifth Amendment. See generally Jacobo-Ramirez v. Noem,[2] --- F. Supp. 3d ---, No. 2:25-cv-02136-RFB-MDC, 2026 WL 310090 (D. Nev. Feb. 5, 2026) (certifying a class of noncitizens who are asserting statutory, regulatory, and constitutional challenges to the government's unprecedented mandatory detention policies); see also generally Jacobo-Ramirez v. Mullin, --- F. Supp. 3d ---, No. 2:25-CV-02136-RFB-MDC, 2026 WL 879799, at *33 (D. Nev. Mar. 30, 2026) (granting partial summary judgment in favor of the class). Thus, Petitioner reasons that he should be immediately released from government custody. See generally Traverse to Pet. at 9, ECF No. 11 [hereinafter, "Traverse"].

The government invokes its novel statutory interpretation of § 1225(b)(2)(A) as the basis for Petitioner's detention. See generally Opposition. On March 30, 2026, the Court issued a classwide judgment declaring the government's interpretation of § 1225(b)(2)(A) unlawful under the INA, because undocumented noncitizens like Petitioner, who are arrested by ICE officers in the interior of the country and alleged to have entered without inspection or parole, are subject to detention under § 1226(a) and its implementing regulations, 8 C.F.R. §§ 236.1, 1236.1, and 1003.19. See Jacobo-Ramirez v. Mullin, at *33. Pursuant to § 706(2)(A) of the Administrative Procedures Act ("APA"), the Court further vacated the government's mass immigration detention policies under § 1225(b)(2)(A), which were encapsulated in an internal ICE Memo and the Board of Immigration Appeals ("BIA") decision in Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025) [hereinafter, "Hurtado"]. See id.

As discussed below, and as the government concedes the Court finds that Petitioner is a member of the Jacobo-Ramirez Class. Therefore, his arrest and ongoing detention under § 1225(b)(2)(A) is unlawful and violates this Court's declaratory judgment and vacatur. Finally, the Court finds the appropriate remedy in this case is Petitioner's immediate release from custody, a permanent prohibitory injunction against re-detention under § 1225(b)(2)(A), and an order requiring the government to follow appropriate procedures in the event they seek to re-detain Petitioner under § 1226(a).

---

[2] Kristi Noem has since been substituted for Respondent Markwayne Mullin, the current Secretary of the Department of Homeland Security, pursuant to the Federal Rules of Civil Procedure. See FED. R. CIV. P. 25(d).

## I.    CLASS MEMBERSHIP

The Court begins with whether Petitioner is a member of the Jacobo-Ramirez Class, which is defined as:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

Jacobo-Ramirez, 2026 WL 879799, at *4 [hereinafter "Class Members"].

The government concedes Petitioner is a Class Member. See Opposition at 1, ECF No. 7. Based on the undisputed verified factual allegations in the Petition, and the documentary evidence supplied by the parties, the Court finds that Petitioner satisfies the criteria for Jacobo-Ramirez Class Membership. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings).

First, Petitioner is an undocumented noncitizen who was arrested and detained by ICE on January 28, 2026, and he remains detained. See Traverse at 2, ECF No. 11; Opposition at 1. Second, he is in removal proceedings before the Las Vegas Immigration Court which is within the District of Nevada. See Traverse, Ex. B at 48 (Order of the Immigration Judge (IJ) for the Las Vegas Immigration Court), ECF No. 11-2 Third, the Department of Homeland Security (DHS) alleges that Petitioner entered the United States without inspection, admission, or parole. See Supplement to Opposition, Ex. A at 4 (DHS Form I-213 Record of Inadmissible Noncitizen), ECF No. 8-1 [hereinafter "I-213"]; id., Ex. A at 9 (DHS Form I-862 Notice to Appear) [hereinafter "NTA"] (alleging Petitioner is "an alien present in the United States who has not been admitted or paroled."). Fourth, Federal Respondents are detaining Petitioner under § 1225(b)(2)(A) and they do not assert that he is or will be subject to detention under §§ 1226(c), 1225(b)(1), or 1231. See generally Opposition. Fifth, Petitioner was most recently arrested well within the country's interior, not while he was arriving in the United States. See Traverse at 2; Id., Ex. A at 9 (I-213).

In sum, Petitioner is clearly a Jacobo-Ramirez Class Member entitled to enforcement of the declaratory judgment and vacatur afforded to the Class by this Court.

Federal Respondents are reminded that the declaratory judgment entered in favor of Jacobo-Ramirez Class Members has "the force and effect of a final judgment or decree." 28 U.S.C. § 2201. In other words, the "declaratory judgment is a real judgment, not just a bit of friendly advice." Badger Cath., Inc. v. Walsh, 620 F.3d 775, 782 (7th Cir. 2010). As parties to Jacobo-Ramirez, Federal Respondents are therefore obligated to comply with that judgment. See, e.g., Maness v. Meyers, 419 U.S. 449, 458 (1975) ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly."); United Aeronautical Corp. v. United States Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023) ("But in suits against government officials and departments, we generally assume that they will comply with declaratory judgments.").

Respondents offer no explanation for their continued reliance on § 1225(b)(2)(A) to detain Petitioner in violation of this Court's binding judgment. See Haaland v. Brackeen, 599 U.S. 255, 293 (2023) ("After all, the point of a declaratory judgment is to establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by *res judicata*.") (citation modified); id. ("This form of relief conclusively resolves the legal rights of the parties.") (citation modified). Thus, Petitioner was forced to seek enforcement of the Jacobo-Ramirez judgment through this habeas petition, and the Court must reiterate its finding that Petitioner's ongoing detention is unlawful under the INA, because his detention is governed by § 1226(a) and its implementing regulations. See Jacobo-Ramirez, 2026 WL 879799, at *33.

## II.    REMEDY

Based on the record before it, the Court finds that Petitioner has been subjected to months of arbitrary detention in violation of his statutory rights, as well as the Jacobo-Ramirez judgment. Having found that Petitioner's ongoing detention, and the arrest and detention procedures he has received heretofore, unlawful, the Court turns to the proper remedy. Before fashioning a remedy for this specific case, the Court outlines some general principles which govern habeas corpus proceedings. Federal courts have equitable discretion to fashion habeas relief as "law and justice

require." Brown v. Davenport, 596 U.S. 118, 132 (2022) (quoting 28 U.S.C. § 2243). Indeed, this Court's remedial power is "broad and flexible" when it sits in habeas. See U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (citation omitted); Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief. . . . The court is free to fashion the remedy as law and justice require . . . .") (citation omitted). Nonetheless, since "[h]abeas is at its core a remedy for unlawful executive detention," "[t]he typical remedy for such detention is, of course, release." Munaf v. Geren, 553 U.S. 674, 693 (2008) (citations omitted). Since Petitioner's detention is void *ab initio*, the Court finds that the typical remedy is the appropriate one in this case.

Petitioner's detention has been unlawful from the very moment it began. Specifically, Respondents have deprived him of significant statutory procedural protections under the INA and which he is owed under this Court's Jacobo-Ramirez judgment. As found here, Mr. Ramirez is properly subject to 8 U.S.C. § 1226(a), which mandates a series of procedural protections vis-à-vis its implementing regulations. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196–97 (9th Cir. 2022). Relevant here, ICE must obtain a warrant, make an initial custody determination, and offer a meaningful bond hearing to detain a noncitizen under 8 U.S.C. § 1226(a). Beginning with the warrant requirement, ICE must generally obtain an administrative warrant (*i.e.*, a Form I-200) to arrest a noncitizen under § 1226(a). See Djiwaje v. Bondi, No. 2:26-cv-00344-RFB-MDC, 2026 WL 926753, at *2 (D. Nev. Apr. 6, 2026) (citing 8 C.F.R. § 236.1(b)(1)); see also 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, [a noncitizen] may be arrested . . . .").[3] Even when they do, a noncitizen is entitled to an individualized, initial custody determination at the outset of detention. See Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)). Essentially, when a noncitizen is arrested, they can secure their freedom by showing that they are neither dangerous nor a flight risk; insofar as the arresting officer agrees, "[t]he [noncitizen] will be released." Id. (citing § 236.1(c)(8)). Overall, the warrant requirement, the initial custody determination, and the full constellation of procedural safeguards embedded into § 1226(a) serve

---

[3] While the INA provides certain exceptions for warrantless arrests, these exceptions are narrow, limited, and irrelevant to this case, as the government does not invoke them. See Djiwaje, 2026 WL 926753, at *2 (citing 8 U.S.C. § 1357).

as powerful bulwarks against the arbitrary, erroneous, and unconstitutional deprivation of liberty. See Rodriguez Diaz, 53 F.4th at 1209. And, most importantly, they are *mandatory* under federal law. See Backcountry Against Dumps v. Fed. Aviation Admin., 77 F.4th 1260, 1267 (9th Cir. 2023) ("A federal agency . . . is obliged to abide by the regulations it promulgates.") (citations and quotation marks omitted).

Respondents have failed to submit any evidence that it followed its own regulations. They have presented no evidence which demonstrates that ICE obtained a warrant, or conducted an initial custody determination, for Mr. Ramirez, even though this Court explicitly ordered them to do so. See Order Appointing Counsel 2–3, ECF No. 4 (April 22, 2026). As these procedures set forth the lawful process by which ICE may arrest and detain someone and as they were not followed here, it necessarily follows, and the Court finds, that Petitioner's arrest and detention are and have been unlawful and in violation of this Court's very orders from the moment of his arrest.

The Court rejects Respondents' attempt to rely upon a bond order that occurred *after* his unlawful arrest to justify his continued detention. Since Petitioner's initial arrest and continued detention without appropriate procedures was unlawful (and in violation of the Court's declaratory judgment as to the class), the subsequent bond hearing did nothing to address this unlawful conduct. See generally Opposition, Ex. A (Bond Order), ECF No. 7-1.[4] Respondents cannot cure these violations by conducting a *post-hoc* bond hearing, as the warrant requirement and the initial custody determination are designed to establish a lawful basis for detention in the first instance— a legal prerequisite not addressed by the immigration court in its bond order. The Court will not bless Respondents' "detain first, justify later" approach to peoples' liberty, which eviscerates § 1226(a)' regulatory framework. Put differently, "ordering a bond here 'would effectively allow

---

[4] To be clear, the Court expresses no opinion on the constitutional adequacy of the bond order or Petitioner's due process claim more broadly. That said, the Court notes that this very short bond order raises grave constitutional concerns as it provides no explanation as to why this petitioner's limited criminal history presents a danger to the community. See Bond Order at 1; see also Su Hwa She v. Holder, 629 F.3d 958, 963 (9th Cir. 2010), superseded by statute on other grounds as stated in Ferrer-Rodriguez v. Blanche, No. 25-1161, 2026 WL 1093348, at *2 n.3 (9th Cir. Apr. 22, 2026) ("Due Process and this court's precedent require a minimum degree of clarity in dispositive reasoning . . . .") (citations omitted); see also Sagaydak v. Gonzalez, 405 F.3d 1035, 1040 (9th Cir. 2005) ("Immigration judges, although given significant discretion, cannot reach their decisions capriciously and must indicate how [they] weighed the factors involved and how [they] arrived at [their] conclusion.") (alterations in original) (citations and internal quotation marks omitted).

the [g]overnment to transform an unlawful detention into a lawful one through *post-hoc* justifications.'" Melendez Paz v. Mullin, No. 2:26-cv-00296-RFB-MDC, 2026 WL 1194944, at *7 (D. Nev. May 1, 2026) (quoting Zheng v. Rokosky, No. 26-cv-01689, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026)). Therefore, the Court concludes that Mr. Ramirez must be immediately released from government custody as this is what "law and justice" require. See 28 U.S.C. § 2243.

### III.    CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1-1) is **GRANTED**.

**IT IS FURTHER ORDERED** Respondents must **RELEASE** Petitioner from detention **ON PERSONAL RECOGNIZANCE on July 1, 2026** between the hours of **12:00 and 3:00 p.m.** Counsel for Petitioner (or their designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window.

**IT IS FURTHER ORDERED** Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with Petitioner's liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing. If Federal Respondents impose release conditions in violation of this Order, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** Respondents must return Petitioner's personal property, including any personal identification and employment authorization documents, **UPON HIS RELEASE.** If Federal Respondents fail to do so, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** Respondents may not re-detain Petitioner during the pendency of his current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under 8 U.S.C. § 1226(a) and its

implementing regulations. At this hearing, the government must bear the burden of establishing that detention is appropriate by clear and convincing evidence.

**IT IS FURTHER ORDERED** the Parties must file a **JOINT STATUS REPORT** by **July 2, 2026** confirming Respondents' compliance with this Order including (i) the date and time of Petitioner's release; (ii) compliance with this Court's directives concerning release on personal recognizance; and (iii) the return of Petitioner's personal property.

The Clerk of Court is kindly instructed to enter judgment accordingly and close this case.

The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case.

**DATED:** June 30, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**